UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN P. KUJAWSKI,

        Plaintiff,

    v.                               Case No. 07-cv-330-JPG

ELAINE L. CHAO, Secretary of Labor,

        Defendant.

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff John P. Kujawski's ("Kujawski") motion for a preliminary injunction (Doc. 6). Defendant Elaine L. Chao, Secretary of the United States Department of Labor ("Secretary") responded to the motion with her own motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 14). Kujawski has responded to that motion (Doc. 24). The Court held a hearing on September 14, 2007, at which Kujawski and Antoinette Cusanelli testified. For the following reasons, the Court will deny Kujawski's motion for a preliminary injunction.

## I.    Preliminary Injunction Standards

A party seeking a preliminary injunction must make a threshold showing that (1) it has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if the injunction is not granted. *Ferrell v. United States Dep't of Housing & Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). If the moving party is able to establish these three factors, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Ferrell*, 186 F.3d at

811.

## II.     Likelihood of Success on the Merits

This case arose after the Secretary issued advisories regarding certain reporting

obligations under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA").

Those advisories required Kujawski, a designated legal counsel ("DLC") of the Brotherhood of

Locomotive Engineers and Trainmen ("BLE"), to file an annual report of his payments over a

designated dollar amount to any union or union officer or employee.  A DLC is an attorney

recommended by the union to its members for representation in injury lawsuits, for example,

suits under worker's compensation laws, the Federal Employers' Liability Act or other personal

injury laws.  Decades ago, unions instituted the DLC designation in order to assist its injured

members and their families in locating honest and competent legal representation for their injury

claims.  *See Brotherhood of R.R. Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1, 2

(1964).  Examination of the relevant issues necessarily begins with the LMRDA itself.

### A.     Relevant LMRDA Provisions

Concerned with corruption in the field of labor relations, Congress enacted the LMRDA

in 1959 to protect the rights of employees and the public in general.  *See* LMRDA § 2(b), 29

U.S.C. § 401(b).  A major form of this protection was embodied in reporting requirements that

would bring to the light of day certain financial transactions in the field of labor relations.  One

of those reporting requirements, § 203 of the LMRDA, is at issue in this case.  The relevant

portions follow:

2

Every employer who in any fiscal year made –

> (1) any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses), or any promise or agreement therefor, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except . . . payments of the kind referred to in section 186(c) of this title;

> * * *

> shall file with the Secretary a report, in a form prescribed by him, signed by its president and treasurer or corresponding principal officers showing in detail the date and amount of each such payment, loan, promise, agreement, or arrangement and the name, address, and position, if any, in any firm or labor organization of the person to whom it was made and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made.

LMRDA § 203(a), 29 U.S.C. § 433(a).  The exemption for "payments of the kind referred to in §

186(c)" includes payments made "with respect to the sale or purchase of an article or commodity

at the prevailing market price in the regular course of business."  29 U.S.C. § 186(c)(3).

Information subject to the attorney-client privilege is also excluded from the reporting

requirement of § 203(a)(1).  LMRDA § 204, 29 U.S.C. § 434.

Section 203(a) applies only to "employers."  The LMRDA includes in its definition of

"employer":

> any employer . . . engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees. . . .

LMRDA § 3(e), 29 U.S.C. § 402(e).

Finally, to implement the LMRDA, Congress authorized the Secretary "to issue, amend,

and rescind rules and regulations prescribing the form and publication of reports required to be

3

filed under this subchapter and such other reasonable rules and regulations . . . as he may find

necessary to prevent the circumvention or evasion of such reporting requirements."  LMRDA §

208, 29 U.S.C. § 438.

     B.    <u>Department of Labor Rules and Regulations</u>

The Secretary has, indeed, issued rules and regulations under the authority Congress

conferred.  Those regulations require an employer to file an annual report "on the United States

Department of Labor Form LM-10 entitled, 'Employer Report' in the detail required by the

instructions accompanying such form and constituting a part thereof."  29 C.F.R. § 405.3

(footnotes omitted).  The LM-10 form and its instructions were included as a part of the

regulation when it was promulgated.

The guide accompanying the LM-10 and its instructions describe who must file the form:

> **Who Must File.** – Not all employers subject to the Act are required to file a
> report.  Only those employers as defined in the Act who have been involved in
> certain financial transactions or arrangements with labor organizations, union
> officials, employees or labor relations consultants, or who have made
> expenditures for certain objects relating to employees' or unions' activities must
> complete the attached Employer Report Form LM-10. . . .

The instructions accompanying the Form LM-10 also list payments that are exempt from

reporting, including:

> sporadic or occasional gifts, gratuities, or favors of insubstantial value, given
> under circumstances and terms unrelated to the recipients' status in a labor
> organization; e.g., traditional Christmas gifts.

Employer Report Form LM-10 Instructions for ¶ 8A.

The Secretary has also published the LMRDA Interpretative Manual ("Manual") to give

its staff and the public guidance on implementing the statute and regulations.  The Manual

contains the following explanation about the foregoing payments that need not be reported on

the LM-10:

> We should all take cognizance of the "de minimus non curat lex" doctrine.  This
> means that courts will not find persons guilty of acts involving trivial sums of
> money.  For our purpose, therefore, when an employer picks up the lunch tab
> when he and the union officer have had lunch together, no report will be required
> from either.  Likewise, a Christmas gift of nominal value would not require
> reports.  However, when the "de minimus" point has been passed, reports are
> required.  A gift of a car by the employer to the union leader will of course
> require a report.  Each case, as it arises, must be considered on its own facts.

Manual, § 241.700.  The Secretary's decision not to enforce the reporting requirements for

"trivial sums" has come to be known as the "*de minimus* rule."  The Secretary has observed the

*de minimus* rule since at least 1963.

Historically, the Secretary has interpreted the LM-10 filing requirement to apply only to

employers who do attempt to influence or affect employees in exercising their rights to organize

and bargain.  Thus, until recently, it has not enforced the LM-10 filing requirement against

DLCs or other attorneys who gave gifts or made loans to unions or union officers or employees

regardless of the size of those gifts or loans.

The questions at issue in this case arose when, in 2005, the Secretary began issuing

advisories on her website regarding the application of § 203(a) to DLCs and the *de minimus* rule.

C.   Recent Website Advisories

The Secretary's first relevant website advisory was issued on March 31, 2005.  That

advisory did not address employers' reporting requirement but instead addressed the LMRDA's

annual reporting requirements for union officers and employees, who must report certain

transactions on Form LM-30.  The Secretary had also observed a long-time *de minimus* rule with

respect to the filing of Form LM-30s.  In March 2005, the Secretary announced that she would

only observe the *de minimus* rule as it applied to Form LM-30 filings if the particular gift,

gratuity or loan was for $25 or less.

On June 27, 2005, the Secretary updated an advisory addressing reporting requirements for transactions involving a trust in which a union is interested.[1]  The advisory reiterated the *de minimus* $25 threshold for Form LM-30 filings involving such trusts and extended the threshold to Form LM-10 filings involving trusts as well.  The advisory also noted that because the LMRDA's definition of employer is broad, it is likely that a law firm who gives a gift to a union officer or employee must report it on a Form LM-10.

On July 19, 2005, the Secretary noted in a website advisory that its efforts to obtain compliance with Form LM-30 reporting has raised questions with respect to Form LM-10 reporting.  The advisory stated that it had not yet released guidance on Form LM-10 filing requirements but that the expected guidance would contain a grace period for first-time Form LM-10 filers similar to that provided for Form LM-30 filers.

On November 7, 2005, the Secretary issued an advisory stating that after receiving numerous LM-30 reports observing the $25 *de minimus* exemption threshold, the Secretary had concluded that $25 was too low.  She then announced that she would raise the *de minimus* threshold to $250 or less for all gifts or payments in the aggregate.

On November 9, 2005, the Secretary posted an advisory containing "Frequently Asked Questions" about Form LM-10.  This advisory acknowledged a *de minimus* exemption applicable to Form LM-10 filings for payments totaling $250 or less (FAQ 15) and that law

---

[1]Exhibit 4 to the Complaint, which purports to contain a copy of this advisory, is very difficult to follow because it omits certain pages and authenticating information.  In addition, on certain pages that are there, the text has been truncated at the right margin.  Should a party use this document in relation to a future filing, the Court strongly advises it to file a complete copy of the document with adequate identifying information.

firms that make payments covered by § 203(a) must file Form LM-10s regardless of the nature or reason for those payments (FAQ 6). The Secretary recognized that the new guidance on these and other matters may have enlightened some employers that they should have filed reports in the past but had not done so. For those first-time filers, the Secretary announced a special enforcement policy in the interest of achieving greater compliance: absent extraordinary circumstances, she would require reports only for the first fiscal year beginning after January 1, 2005, and not for prior years' reports that might have been due. For those who did not file timely Form LM-10s for that fiscal year, the Secretary would seek reports for the five prior years.

The following day, the Secretary issued a brief advisory pointing out that it had issued the "Frequently Asked Questions" advisory about Form LM-10 and reiterating the grace period for first-time filers.

On March 7, 2006, the Secretary posted yet another advisory on her website, also in the "Frequently Asked Questions" format. This advisory explicitly stated that DLCs are "employers" for the purposes of § 203(a) if they meet the requirements of LMRDA§ 3(e), 29 U.S.C. § 402(e) (FAQ 3) and reaffirmed the $250 aggregate value threshold for the *de minimum* exemption to apply (FAQ 50). It also listed additional circumstances where the Secretary would not enforce § 203(a)'s reporting requirement: payments of $20 or less per person at "widely-attended gatherings" and payments of $125 or less per person for one or two "widely-attended gatherings" (FAQ 61). "Widely-attended gatherings" are defined as gatherings where "it is expected that a large number of persons will attend and that attendees will include both union officials and a substantial number of individuals with no relationship to a union" and where union officials are treated the same as other guests. In addition, the Secretary extended the grace

period for first-time filers to May 15, 2006.

Kujawski makes reference to a May 12, 2006, website advisory from the Secretary, although he has not filed it with the Court.  He claims that advisory stated that DLC were not obligated to report "litigation expenses" in their Form LM-10 filings as long as they were made at the prevailing market price in the regular course of business.

The Secretary issued the foregoing website advisories without giving notice to the general public or offering an opportunity for its comments.

D.    Application to Plaintiff

The law firm of which Kujawski is a partner employs approximately thirteen full- or part-time people.  As a part of his practice, Kujawski sponsors and attends BLE's and other unions' legal seminars and conventions and meetings, for which he frequently provides refreshments.  He also presents lectures to union members on legal topics of interest to them, represents injured union members and provides advice and consultation on other civil matters and laws of interest to union members.  He also often buys coffee or provides other gifts to union representatives in exchange for their consultations as non-testifying witnesses about potential and actual litigation involving union members.  He does not engage in any "persuader" activities as those activities are contemplated by the LMRDA or practice in the area of labor law.

Keeping track of the aggregate annual value of the gifts and favors Kujawski gives to union officials or employees would be impossible both because of the vast number of gifts he gives of negligible value (e.g., cups of coffee) and because of the difficulty in assessing the identity of union officers and employees who attend the large gatherings Kujawski sponsors or at which he makes presentations.

Kujawski further fears that the disclosure of his consultations with union officials

reportable on the Form LM-10, which are open to public inspection, would render the consulted union officials subject to retaliation by their employers and would thus impair his ability to provide legal advice to his clients.

Kujawski did not file a Form LM-10 in response to the Secretary's advisories, and on February 28, 2007, the Secretary directed him to file Form LM-10s for the preceding five years and warned him of potential civil and criminal penalties if he did not do so. Kujawski believes filing Form LM-10s would require him to disclose privileged information regarding his representation of a union officer in *Brad Pearson v. Illinois Central Railway Company*, No. 06-cv-822-DRH, a case currently pending, as well as other matters in which he represents union officers and members, and that such disclosure would harm his ability to provide legal advice to his clients. It will also greatly increase his record-keeping obligations in order to track when payments to an individual reach the *de minimus* threshold.

     E.    <u>The Litigation</u>

Kujawski filed this lawsuit on May 2, 2007, and filed the pending motion for a temporary restraining order, preliminary injunction and permanent injunction two days later. In his complaint, Kujawski asserts that the Secretary's advisories implement a radical departure from its prior practice of requiring Form LM-10 reports only from employers in an actual or potential bargaining relationship with a union or employers engaged in "persuader activity" where the payment is to influence or affect employees in exercising their bargaining rights. Kujawski's complaint contains six counts. It alleges that the Secretary's advisories exceeded her authority under § 203(a)(1) of the LMRDA, 29 U.S.C. § 433(a)(1) (Count I), that the Secretary's extension of the Form LM-10 filing requirement to DLC but not to other attorneys is arbitrary and capricious in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A)

(Count II), that the application of the Form LM-10 reporting requirement to DLCs (Count III) and the implementation of a numeric threshold for the *de minimus* exemption (Count IV) violate the APA, 5 U.S.C. § 533 because those advisories were implemented without engaging in notice and comment rulemaking, that the numeric threshold for the *de minimus* exemption is arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(A) (Count V), and that the Secretary has infringed on his First Amendment rights by issuing the subject advisories (Count VI).

The Court begins by examining the Secretary's rule applying § 203(a)(1)'s reporting requirements to DLCs, for if that application is not permissible, the other issues in this case become moot.

F.    Analysis

1.    Application of Reporting Requirements to DLCs

Kujawski argues that the Secretary's advisories requiring DLCs to file Form LM-10s (1) are arbitrary and capricious because they depart from the purpose of the § 203 as articulated in its legislative history, (2) are arbitrary and capricious because the requirement is not extended to non-DLC attorneys and (3) are contrary to DLCs' First Amendment rights.

a.    Arbitrary and Capricious Nature

Kujawski argues that applying the Form LM-10 reporting requirement to him is arbitrary and capricious under the APA, 5 U.S.C. § 706(2).  Under the APA, agency actions may be set aside they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);  *see Sierra Club v. Marita,* 46 F.3d 606, 619 (7th Cir. 1995).

The Secretary's application of § 203(a)(1) to DLCs is not arbitrary or capricious, an abuse of discretion or not in accordance with the law.  Instead, it is a faithful interpretation of the statute.  Although the legislative and agency enforcement history Kujawski cites may focus on

10

Congress's intent to require reports when an individual is involved in persuader activities, Congress did not limit § 203(a)(1) to such activities when it chose the language of that provision. The starting point for the Court's inquiry about what § 203(a)(1) means is the text of the statute itself. If the "language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," and "the statutory scheme is coherent and consistent," the inquiry is over. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). To determine whether a statute is plain or ambiguous, the Court must consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

In this case, the plain language of § 203(a) applies the reporting requirement to all employers who made non-exempt payments. It contains no requirement that the employer participate in persuader or other labor relations activities. The definition of "employer" in § 3(e) of the LMRDA, 29 U.S.C. § 402(e), is broad and includes any "employer" under any federal law. Under a plain reading of the relevant terms, § 203(a) covers without qualification all DLCs who are "employers."

The context of the statute as a whole is not inconsistent with this plain language. It is clear that later provisions of § 203 apply only in connection with persuader activities. For example, § 203(a)(2) requires an employer to report previously undisclosed payments to its employees for the purpose of causing an employee to persuade other employees regarding the right to organize and bargain, and § 203(a)(3) requires an employer to report payments that had an object of interfering with, coercing or restraining an employee's exercise of his right to organize and bargain. Similarly, § 203(b) is explicitly directed at those who make agreements with employers to conduct persuader activities. That § 203(a)(1) makes no reference to any such qualification when these and other provisions do, leads to the conclusion that Congress intended

not to include such a requirement in § 203(a)(1).  It certainly knew how to draft such a requirement had it wanted to, but it declined to do so.

The Court is, of course, given pause by this conclusion.  It is clear from the other provisions of § 203 that one of the primary purposes of the provision was to expose the backers of those trying to dissuade employees from exercising their organization and bargaining rights so that employees could take that information into account when listening to the persuader's message.  Applying § 203(a)(1) to DLCs does not serve this purpose at all, for DLCs are unlikely to play any role in labor relations.  Nevertheless, the Court will not discount the possibility that the plain language also reflects a Congressional intent to bring to light other types of corruption that could harm union members such as, for example, the designation of legal counsel for reasons other than their competence and honesty.  In the absence of any binding authority requiring this Court to find § 203(a)(1) ambiguous, the Court will accept the plain language of the statute and will find that the Secretary's insistence on applying it to DLCs is not arbitrary, capricious or contrary to law.

The Court is further sympathetic to DLCs who have been surprised by the Secretary's new policy of strictly enforcing the Form LM-10 reporting requirement against all employers.  It seems clear that prior to the Secretary's recent advisories, she and her predecessors had uniformly espoused a clear policy of interpreting the reporting requirement not to apply to DLCs and other attorneys, and of not enforcing the requirement on DLCs and other attorneys.  Changing course to strictly enforce the statute is fine, but retroactively requiring reporting for periods in which the Secretary's interpretation was diametrically opposed to the current interpretation and in which the clear policy was to decline enforcement strikes the Court as problematic.  However, since neither party has focused on this disturbing aspect of the

12

Secretary's new advisories, the Court will not examine the issue further.

Neither is the Secretary's application of § 203(a)(1) to DLCs impermissible because it is discriminatory. Kujawski argues that the Secretary's rule is arbitrary and capricious because it does not apply to non-DLC attorneys and thereby chills the use of the DLC program. However, there is no evidence that the requirement is not being applied to *all* attorneys who make payments or loans to unions or union officials regardless of whether they are DLCs. Indeed, the guide to preparing the Form LM-10 report states that *all* employers "as defined in the Act who have been involved in certain financial transactions or arrangements" must complete the Form LM-10. Furthermore, the Secretary's advisory of June 27, 2005, includes law firms generally, not just DLCs, in the category of entities who are likely obligated to file Form LM-10s.

For these reasons, Kujawski appears unlikely to be able to show that the Secretary's application of the § 203(a)(1) reporting requirements to DLCs is arbitrary or capricious, an abuse of discretion or not in accordance with the law.

b.      First Amendment Rights

Kujawski argues that the Secretary's advisories applying the Form LM-10 reporting requirement to him infringe on his First Amendment rights. Under the APA, agency actions may be enjoined or overturned if they are "contrary to constitutional right." 5 U.S.C. § 706(2)(B). He rests his argument primarily on *Brotherhood of Railroad Trainmen v. Virginia State Bar*, 377 U.S. 1 (1964), and *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576 (1971). Both cases recognized the First Amendment associational right of railroad workers "to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them" by recommending reliable, competent counsel to injured union workers, for example, by having a DLC program. *Trainmen*, 377 U.S. at 5-6; *see United Transp. Union*,

13

401 U.S. at 580.  In those cases the Supreme Court held that state bar associations cannot

infringe on those rights by forbidding unions from recommending counsel to their members,

*Trainmen*, 377 U.S. at 8, or by hampering certain union efforts to assist its members and their

attorneys to obtain meaningful access to the courts; *United Transp. Union*, 401 U.S. at 585-86.

Kujawski has failed to convince the Court that the Secretary's advisories impermissibly

infringe on the First Amendment rights at issue in *Trainmen* and *United Transportation Union*.

As noted above, those cases dealt with the associational rights of union members and their rights

to assist each other in their legal cases.  Kujawski has not explained how requiring DLCs to file

Form LM-10 reports impermissibly impinges on those rights but instead states that "it is too

plain for extended discussion."  Pl. Mem. Supp. Mot. Prelim. Inj. at 16.  It is not so plain to the

Court, and, indeed, other courts have found that other reporting requirements in § 203 do not

impermissibly impinge on First Amendment rights.  *See Humphreys, Hutcheson & Mosley v.*

*Donovan*, 755 F.2d 1211, 1219-22 (6th Cir. 1985);  *Master Printers of Am. v. Donovan*, 751 F.2d

700, 713-14 (4th Cir. 1984);  *Master Printers of Am. v. Donovan*, 532 F. Supp. 1140, 1147-51

(N.D. Ill. 1981), *aff'd*, 699 F.2d 370 (7th Cir. 1983).

The Court recognizes that "compelled disclosure has the potential to infringe upon first

amendment freedoms" but that it is permissible "provided that the chill placed on a person's first

amendment rights is justified by a sufficient purpose behind the legislation."  *Master Printers*,

532 F. Supp. at 1147.  To the extent Kujawski believes reporting of attorney-client privileged

information will chill the attorney-client relationship and any related First Amendment rights,

those fears are baseless because attorney-client privileged information is exempt from reporting

requirements.  *See* LMRDA § 404, 29 U.S.C. § 434.  Kujawski has not sufficiently addressed

any other First Amendment rights that may be at issue in this case, whether the disclosure

14

requirements actually chill the exercise of those First Amendment rights, the nature of the government interests at issue in this case or how those interests are balanced against the First Amendment rights at issue.

The Court takes issue, however, with one point made by the Secretary. Kujawski complains that he will be forced to disclose amounts he pays on behalf of his clients during the course of his representation for, for example, expert or consultant fees. The Secretary argues that these payments are not reportable due to § 203(a)'s explicit exclusion of "payments of the kind referred to in section 186(c)." She believes this provision covers any payments made pursuant to a legal services agreement such as, for example, consultant fees or expert fees. However, § 186(c) refers to the sale or purchase of *articles or commodities*, not services. Purchasing the services of a consultant or expert can hardly be considered purchasing an article or commodity. Therefore, unless the payments fall under the attorney-client privilege, they are not exempted under § 186(c).

Nevertheless, because Kujawski has not supported his First Amendment argument with sufficient explanation and argument, he has failed to demonstrate a likelihood of success on that claim.

c.    Notice and Comment Rulemaking

Kujawski argues that the Secretary's advisories applying the Form LM-10 filing requirement to DLCs require notice and comment rulemaking because they compel an entire new class of businesses to file. The Secretary argues that its advisories stating that DLCs must file Form LM-10s is an interpretive rule that simply states what the agency thinks § 203(a)(1) means.

Generally, when an agency promulgates a rule, it must use notice and comment

rulemaking:

> A rule promulgated by an agency that is subject to the Administrative Procedure
> Act is invalid unless the agency first issues a public notice of proposed
> rulemaking, describing the substance of the proposed rule, and gives the public an
> opportunity to submit written comments;  and if after receiving the comments it
> decides to promulgate the rule it must set forth the basis and purpose of the rule in
> a public statement.  5 U.S.C. §§ 553(b), (c).

*Hoctor v. United States Dep't of Ag.*, 82 F.3d 165, 167 (7th Cir. 1996).  Congress has directed

the Secretary to follow the APA when issuing, amending or rescinding rules and regulations

pursuant to the LMRDA.  LMRDA § 606, 29 U.S.C. § 526.

Rulemaking procedures are not required, however, where an agency issues "interpretive

rules, general statements of policy, or rules of agency organization, procedure, or practice."  5

U.S.C. § 553(b)(A));  *see Hoctor*, 82 F.3d at 167;  *Metropolitan Sch. Dist. of Wayne Twp. v.

Davila*, 969 F.2d 485, 488-89 (7th Cir. 1992).  "All agencies charged with enforcing and

administering a statute have 'inherent authority to issue interpretive rules informing the public of

the procedures and standards it intends to apply in exercising its discretion.'"  *Davila*, 969 F.2d

at 490 (quoting *Production Tool v. Employment & Training Admin.*, 688 F.2d 1161, 1166 (7th

Cir. 1982));  *accord Davila*, 969 F.2d at 494.  Such rules serve the purpose of expeditiously

informing the public about the interpretive judgments an agency will necessarily make in

enforcing the statutes Congress has charged it to enforce and the rules it has promulgated

pursuant to that authority.  *Hoctor*, 82 F.3d at 167.  Courts generally refer to the two categories

of rules as "legislative rules," those that require notice and comment rulemaking, and

"interpretive rules," those that do not.  *Id.* at 167.

Distinguishing between legislative and interpretive rules is difficult but important.

Determining whether a rule is legislative or interpretive starts with the agency's characterization

16

of the rule. *Davila*, 969 F.2d at 489 (citing *General Motors Corp. v. Ruckleshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) (*en banc*); *United Tech. Corp. v. United States EPA*, 821 F.2d 714, 718 (D.C. Cir. 1987)).  While not dispositive of the issue, it is clearly a relevant factor. *Davila*, 969 F.2d at 489.

Then the Court must consider the character of the rule itself:

An interpretive rule simply states what the administrative agency thinks the [underlying] statute means, and only reminds affected parties of existing duties. On the other hand, if by its action the agency intends to create new law, rights, or duties, the rule is properly considered to be a legislative rule.

*United Tech.*, 821 F.2d at 718, *cited in Davila*, 969 F.2d at 489.  "[L]egislative rules have effects *completely independent* of the statute." *Davila*, 969 F.2d at 490 (internal quotations omitted; emphasis in original).  The Seventh Circuit has also focused on the type of power the agency is using when it makes the rule and whether the rule is as binding on courts as congressional enactments or merely entitled to deference:

[R]ules are legislative when the agency is exercising delegated power to make law through rules, and rules are interpretative when the agency is not exercising such delegated power in issuing them.  When an agency has no granted power to make law through rules, the rules it issues are necessarily interpretative;  when an agency has such granted power, the rules are interpretative unless it intends to exercise the granted power. . . .

2 K. Davis, Administrative Law Treatise s 7:10 at 54 (2d ed. 1979), *cited in Production Tool*, 688 F.2d at 1166;  *accord Davila*, 969 F.2d at 490.  Whether a rule is binding and whether a rule has a substantial impact is not relevant to whether it is legislative or interpretive. *Davila*, 969 F.2d at 493.  It is the nature of the rule that is important.

The rule applying Form LM-10 filing requirements to DLCs is interpretive.  First, it is relevant that the Secretary views the rule as simply interpreting § 203(a)(1) rather than creating any new law or duty.  Second, as explained earlier in this order, the Secretary's advisories "only

17

remind[] affected parties of existing duties" required by the plain text of § 203(a)(1), *United Tech.*, 821 F.2d at 718, and do not in any way have an effect independent of the statute, *Davila*, 969 F.2d at 490.  They were authorized not under the Secretary's delegated power to create a duty for the DLC but under her authority to explain the duty created by § 203(a)(1).  The agency's advisories are simply announcements of a modification to the "standards it intends to apply in exercising its discretion" to enforce § 203(a)(1), that is, that it will now enforce the statute against entities which, under prior Secretaries' interpretation of § 203(a)(1), were not covered or which, at least under the current Secretary's interpretation, it has previously chosen in its discretion to let slide.  *See Production Tool*, 688 F.2d at 1166.  That the Secretary's 2005 and 2006 enforcement standards may be a change from those used in the prior four decades make it no less "interpretive."  "[A]n agency's change in its reading of a statute does not necessarily make the rule announcing the change legislative."  *Davila*, 969 F.2d at 492.

2.    Dollar Threshold for *De Minimus* Exemption:  Notice and Comment Rulemaking

Kujawski claims that the Secretary violated the APA, 5 U.S.C. § 533, by changing the *de minimus* exemption without notice and comment rulemaking.  He argues that the establishment of a $250 threshold for the *de minimus* reporting exemption is a modification of a legislative rule that required notice and comment rulemaking.  In support of his position, he points to cases holding that an agency must engage in rulemaking when it materially changes its interpretation of a statute or regulation.  *See, e.g., Motor Vehicle Manuf. Ass'n v. State Farm Mut. Auto Ins. Co. ("MVMA")*, 463 U.S. 29, 57 (1983).  He believes the $250 threshold is patently inconsistent with the historic application of the *de minimus* rule on a case-by-case basis as called for in the Form LM-10 instructions and the Interpretive Manual.  Kujawski notes that the Secretary

18

engaged in such notice and comment rulemaking with respect to the establishment of a dollar threshold for the *de minimus* exemption for Form LM-30 reports and argues that it is likewise required to engage in the rulemaking with respect to Form LM-10 filings.  Kujawski further notes that number-based standards are likely to be arbitrary, legislative rules requiring notice and comment rulemaking.  *Hoctor v. United States Dep't of Ag.*, 82 F.3d 165, 170-71 (7th Cir. 1996).

On the other side, the Secretary argues that the $250 threshold is simply an interpretive rule.  She notes agencies' general discretion not to enforce every rule in every instance.  She believes her recent advisories simply give the public further notice how she will use her discretion to interpret the *de minimus* exemption for Form LM-10 filings contained in the instructions to the form and incorporated into 29 C.F.R. § 405.3, a rule that no party argues was improperly promulgated.

Again, the Secretary's rule is interpretive.  Since the publication of the Form LM-10 Instructions, the Secretary has required, among other things, that a payment be "of insubstantial value" before she applies the *de minimus* reporting exemption.  Her website advisories simply inform the public about the agency's current view of "insubstantial value" in applying that exemption and its apparent abandonment of the case by case approach announced in the Interpretive Manual.  It does not create any new law, right or duty but instead explains how the Secretary will exercise her enforcement discretion consistent with an existing exemption.  That she has chosen to inform the public of her judgment does not render the regulation legislative or requiring of notice and comment rulemaking procedures.

The fact that the Secretary's rule contains a numeric value does not prevent it from being an interpretive rule.  It is true that a rule that turns on a number is likely to be arbitrary, not in the forbidden "arbitrary and capricious" sense, but in the sense that it is an arbitrary choice among

19

possible methods of implementing a statute or regulation and is therefore likely to be legislative. *Hoctor*, 82 F.3d at 170.  However, not every rule with a numeric component is legislative.  *Id.* at 171.  In this case, the Secretary has chosen to interpret the phrase "insubstantial value," which inherently carries with it a connotation of a dollar amount, as $250 or less.  Her decision not to enforce § 203(a)(1) against those who, under the plain language of the statute are required to report all qualifying payments, make only payments of $250 or less is within her discretionary enforcement power, which is not subject to notice and comment rulemaking.

Furthermore, the Secretary's decision to engage in notice and comment rulemaking for the Form LM-30 *de minimus* reporting exemption is irrelevant to whether such proceedings were required for the Form LM-10 *de minimus* exemption.  "[T]here is nothing in the [APA] to forbid an agency to use the notice and comment procedure in cases in which it is not *required* to do so," and choosing to use the procedure in one context where it is not required by law does not imply that it is required in similar contexts.  *Hoctor*, 82 F.3d at 171-72 (emphasis in original; disagreeing with *United States v. Picciotto*, 875 F.2d 345, 348 (D.C. Cir. 1989)).

*MVMA* and the other cases cited by Kujawski do not require a different result.  In *MVMA*, Congress explicitly subjected revocation of the rule in question to the APA's rulemaking procedure.  The rule in that case was an agency's legislative rule creating an independent obligation on automobile manufacturers to include certain safety measures in new cars.  Because that rule created an obligation completely independent of the statute, *see Davila*, 969 F.2d at 490, it was legislative and required rulemaking before it could be rescinded.  *MVMA* is inapplicable in this case, which involves an interpretive rule.

That notice and rulemaking might be particularly wise and appropriate in this situation does not impact the legal principles involved.  Notice and rulemaking would likely have headed

off the general outcry from various sectors arguing that the $250 threshold for "insubstantial value" is too low and would wreak havoc on some businesses' accounting systems.  Indeed, the practical reality is that $250 a year does not amount to much in the current economy, and a rule that forces businesses to count the cups of coffee it provides to its clients and consultants each year certainly calls into question the agency's wisdom in allocating its enforcement resources. Nevertheless, it is not the Court's position to decide whether an agency is wise; it can only opine on the likelihood of showing the agency acted unlawfully.

In sum, Kujawski has not demonstrated a likelihood of success on any of the foregoing theories raised in his motion for a preliminary injunction.  He is therefore not entitled to a preliminary injunction.  In light of this finding, the Court need not address the other factors relevant to whether preliminary injunctive relief is appropriate.

III.    Conclusion

For the foregoing reasons, the Court **DENIES** Kujawski's motion for a preliminary injunction (Doc. 6).  The Court **RESERVES RULING** on the Secretary's motion to dismiss (Doc. 14).

**IT IS SO ORDERED.**
**DATED: October 24, 2007**

s/ J. Phil Gilbert_____
**J. PHIL GILBERT**
**DISTRICT JUDGE**