UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN P. KUJAWSKI,

    Plaintiff,

v.

HILDA L. SOLIS, Secretary of Labor,

    Defendant.

Case No. 07-cv-330-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by defendant Hilda L. Solis[1], Secretary of the United States Department of Labor ("Secretary") seeking dismissal of plaintiff John P. Kujawski's ("Kujawski") remaining claim, Count VI (Doc. 63). Kujawski has responded to that motion (Doc. 69), and the Secretary has replied to that response (Doc. 74). The Court also considers Kujawski's motion for a hearing (Doc. 67) to which the Secretary has responded (Doc. 72).

**I.  Background**

The Court has set forth the background of this case and disposed of some issues in two prior orders (Docs. 37 & 46) denying Kujawski's motion for a preliminary injunction (Doc. 6) and granting in part and denying in part the Secretary's motion to dismiss (Doc. 14). The Court adopts the relevant portions of its prior orders as they relate to the issues involved in the pending motion for judgment on the pleadings and assumes the reader's familiarity with those opinions.

In summary, Kujawski has challenged the Secretary's decision to enforce a reporting

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), current Secretary of Labor Hilda L. Solis has been substituted automatically for former Secretary Elaine Chao.

requirement in the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") for gifts or loans Kujawski, a union-designated legal counsel ("DLC"), made to union officials or employees that exceed $250 in value annually in the aggregate. Only one count of Kujawski's complaint remains: that the Secretary has infringed on his First Amendment rights by issuing the subject advisories (Count VI). However, in its June 18, 2008, order (Doc. 46), the Court limited Count VI to Kujawski's claim that his First Amendment rights would be violated by the forced disclosure of litigation expenses he paid or would pay that are not covered by the attorney-client privilege.

## II. Standard for Judgment on the Pleadings[2]

In ruling on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court considers the complaint, answer and any written instruments attached to those pleadings, accepts all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Judgment on the pleadings is appropriate "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).[3] The

---

[2]Kujawski urges the Court to construe the Secretary's motion as a motion for reconsideration because it seeks to dismiss a claim that was also targeted by the Secretary's motion to dismiss. The Court declines to do so. A motion for judgment on the pleadings is a perfectly appropriate way to challenge a claim after an answer has been filed, as it was in this case on July 28, 2008, even if the claim was also challenged in a Rule 12(b)(6) motion.

[3]To the extent this standard has been made more rigorous by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that change does not impact the outcome of the pending motion in this case.

Court may also consider a plaintiff's affidavit or brief demonstrating how he could make out a claim consistent with the facts alleged in his complaint, even though the substance of the affidavit or brief is not included in the complaint. *Forseth*, 199 F.3d at 368; *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

The Secretary argues that she is entitled to judgment as a matter of law because (1) Kujawski has no standing to bring a First Amendment claim in the absence of an actual or imminent injury, (2) the Secretary's regulations do not implicate Kujawski's First Amendment rights, and (3) if the Secretary's regulations infringe on Kujawski's First Amendment rights, the infringement is justified by the government's interests.

In an overly-long response, Kujawski attempts to broaden his claim beyond the limits set by the Court's June 18, 2008, order. The Court will disregard such argument as beyond the scope of this litigation as it now exists. As for relevant matters, Kujawski maintains that the Secretary's regulations impinge on his First Amendment rights because they would ultimately impact his ability to serve as a DLC and make legal services available to union members.

Kujawski also asks for a hearing pursuant to Rule 12(i) (Doc. 67). Kujawski's motion is based on a fundamental misinterpretation of Rule 12(i), which states, in pertinent part, that "a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial." Contrary to Kujawski's reading, Rule 12(i) only requires the Court to consider the parties' arguments; it does not require an oral or evidentiary hearing. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986) (approving hearings "solely upon papers"). In fact, evidentiary hearings are only required if there are disputes of material fact. *Commodities Export Co. v. United States Customs Serv.*, 888 F.2d 431, 436 (6th Cir. 1989). There are no genuine issues of material fact in this case since the Court assumes all facts Kujawski alleges are true for

the purposes of the pending motion. Therefore, the Court need not hold an evidentiary hearing and will deny Kujawski's motion (Doc. 67). *See, e.g., Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997).

**III. Analysis**

A. <u>Standing</u>

The Secretary argues Kujawski does not have standing to bring a First Amendment claim because the injury cited by Kujawski is too speculative. Kujawski claims that the forced disclosure of litigation expenses he paid or will pay that are not covered by the attorney-client privilege is certain to follow from the Secretary's new regulations.

The doctrine of standing is a component of the Constitution's restriction of federal courts' jurisdiction to actual cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* U.S. Const. art. III, § 2. Standing contains three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations, quotations and footnotes omitted); *accord Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008). The Secretary only challenges Kujawski's ability to establish the first element of standing: a concrete, particularized harm that is actual or imminent.

Nothing Kujawski alleges establishes any actual or imminent harm from disclosure of litigation expenses purchased at prevailing market rates in the regular course of business.

4

Despite the Court's earlier skepticism about the applicability of the reporting exception for the purchase of an "article or commodity," LMRDA § 186(c)(3), 29 U.S.C. § 29 U.S.C. § 186(c)(3), to the purchase of legal services or litigation expenses, the Secretary has used her discretion to interpret "article or commodity" to include legal services and services necessary to provide legal representation. Her advisories state that she will not require reporting of such litigation expenses (FAQ3(A)), and there is no indication the Secretary is acting or will act contrary to her posted advisory. Thus, any injury that Kujawski would suffer from such disclosure is purely speculative.

However, Kujawski's response to the Secretary's motion assumes that there are litigation expenses other than those excluded from the reporting requirements under § 186(c)(3), and Kujawski argues that the threat that such expenses must be reported will cause him to censor himself, to refrain from attending or hosting union meetings and possibly to withdraw from the DLC program. The Court finds that such alleged harms as a result of the forced disclosure of certain litigation expenses *not* purchased at prevailing market rates in the regular course of business are not too speculative and confer on Kujawski the ability to challenge those requirements in this litigation. Therefore, the Court must address the remaining arguments in the Secretary's motion.

One further note is in order before the Court turns to the Secretary's substantive arguments. At points in his brief, Kujawski appears to be advocating for his clients' First Amendment rights. In the circumstances of this case, he has no standing to challenge the infringement of his clients' rights where he himself is the plaintiff.

    B.    <u>First Amendment Right</u>

The only part of Kujawski's First Amendment claim that remains rests on the forced

disclosure in the Form LM-10 of litigation expenses *not* purchased at prevailing market rates in the regular course of business. He claims that this reporting requirement has abridged and will continue to abridge his First Amendment right to participate in the DLC program and give legal advice to union members. The Secretary contends that none of her restrictions impair Kujawski's ability to perform these functions.

The Court simply does not see how requiring Kujawski to report on a Form LM-10 litigation expenses not purchased at prevailing market rates in the regular course of business would infringe on his First Amendment rights. The First Amendment rights discussed in *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1 (1964), and *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576 (1971), both cited by Kujawski, are not implicated. Those cases involved union members' rights "to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them" by recommending reliable, competent counsel to injured union workers, for example, by having a DLC program. *Trainmen*, 377 U.S. at 5-6; *see United Transp. Union*, 401 U.S. at 580. This right is not implicated by requiring Kujawski to report gifts or loans of more than *de minimum* value to unions, union officers or union employees.

Furthermore, other courts have held that such reporting requirements do not violate various aspects of the First Amendment. *See Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219-22 (6th Cir. 1985); *Master Printers of Am. v. Donovan*, 751 F.2d 700, 713-14 (4th Cir. 1984); *Donovan v. Master Printers Assoc.*, 532 F. Supp. 1140, 1147-51 (N.D. Ill. 1981), *aff'd*, 699 F.2d 370 (7th Cir. 1983).

To the extent Kujawski may have a First Amendment right to participate in a DLC program, and the Court is not finding that he does, it is not plausible that the Secretary's

6

regulations would significantly hamper his ability to exercise that right. Nothing in the reporting requirement places any significant obstacle on Kujawski's ability to communicate with union members or to offer legal advice to them. Nor does any regulation prevent him from obtaining necessary legal services such as consulting experts to allow him to competently represent his clients. The regulations simply require gifts, loans and payments above market rates to union officials or employees to be reported if they exceed the *de minimus* threshold. Kujawski can avoid the reporting requirement simply by not giving gifts or making loans above the *de minimus* threshold, by paying market rates for legal services or by not purchasing legal services from union officers or employees. It is absurd to suggest that the First Amendment guarantees him the right to do otherwise.

    C.    <u>Balancing Test</u>

The Secretary argues that, even if the Form LM-10 disclosure requirement does impair Kujawski's First Amendment rights, that impairment is justified by the purpose of the reporting requirement.

It is true that "compelled disclosure has the potential to infringe upon first amendment freedoms" but that it is permissible "provided that the chill placed on a person's first amendment rights is justified by a sufficient purpose behind the legislation." *Donovan v. Master Printers Assoc.*, 532 F. Supp. 1140, 1147 (N.D. Ill. 1981), *aff'd*, 699 F.2d 370 (7th Cir. 1983).

As explained in the prior section of this order, any infringement on Kujawski's First Amendment rights is slight. Even after the Secretary's revised disclosure regulations, Kujawski is still able to meet with, advise and represent union members and to retain the legal services he needs at market rates or from those who are not union officials or employees. Any incremental burden he may bear from the requirement to report other transactions pales in comparison with

the government's strong interest, as reflected in the LMRDA, in exposing corruption or the appearance of corruption. *See Master Printers of Am. v. Donovan*, 751 F.2d 700, 706 (4th Cir. 1984) (noting that the deterrence of actual corruption by exposure is a compelling government interest). That government interest extends to protecting union members by bringing to light other types of potentially harmful corruption such as, for example, the designation of legal counsel for reasons other than their competence and honesty. *See, e.g., United States v. Boyd*, 309 F. Supp. 2d 908 (S.D. Tex. 2004) (union officials prosecuted for devising and implemented scheme to defraud union and its members of honest services by securing secret cash payments from attorneys who hoped to acquire or maintain place on union's DLC list). While the Court is not suggesting Kujawski is involved in corruption of the kind cited in *Boyd* – or indeed any corruption at all – the existence of *Boyd* illustrates the importance of the government's interest in disclosure of payments or loans above the *de minimus* level between DLCs and unions, union officials or union employees.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Kujawski's motion for a hearing (Doc. 67), **GRANTS** the Secretary's motion for judgment on the pleadings on Count VI (Doc. 63) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: April 17, 2009**

                                       s/ J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **DISTRICT JUDGE**